OPINION
{¶ 1} Appellant Mario Diano appeals the denial of his suppression motion in the Canton Municipal Court, Stark County. The relevant facts leading to this appeal are as follows.
 {¶ 2} On November 20, 2002, Patrolman Mizner of the North Canton Police Department was on patrol in his police cruiser. At approximately 11:30 PM, his dispatcher relayed that a citizen informant, a member of the Plain Township Fire Department, had reported a white Ford pickup truck sitting at the intersection of South Main and Easthill St., with its driver apparently passed out behind the wheel. The informant also gave a license plate number for the Ford truck. Mizner immediately began proceeding to the reported intersection.
 {¶ 3} The truck had been driven away by the time Mizner reached the area. Soon thereafter, dispatch instructed the officer that the truck was now reported traveling eastbound on Schneider Road, which intersects South Main. Mizner drove eastbound on Schneider until he reached the city limits of North Canton, unable to locate the reported truck. Another officer, Patrolman Kramer, happened to be in his cruiser on a side street off of Schneider at that time. Kramer, however, had not seen the truck. A few minutes later, the officers observed the truck, now traveling westbound on Schneider. Mizner turned his cruiser around, pulled back onto Schneider, and attempted to follow the truck, but he had already lost sight of it. Mizner eventually turned onto Sunford St., a side street running perpendicular to Schneider. At that time, the officer observed the truck pulling into the parking lot of a large apartment complex. Mizner also pulled into the lot. The truck's driver appeared to Mizner as having difficulty pulling into a space in the lot. Mizner verified with dispatch that the license plate matched the vehicle first reported at South Main and Easthill.
 {¶ 4} By this point in time, Mizner had activated his cruiser's lights. Tr. at 11. He exited the vehicle and approached the white truck on foot, at which time he observed appellant, the driver, passed out behind the wheel. Appellant, who was "very disoriented" (Tr. at 9), was subsequently arrested and charged with operating a motor vehicle under the influence of alcohol (R.C. 4511.19(A)(1)), operating a motor vehicle with a prohibited breath alcohol level (R.C. 4511.19(A)(6)), and possession of drug paraphernalia (R.C. 2925.14).
 {¶ 5} On January 9, 2003, appellant filed a motion to suppress. On January 22, 2003, following a hearing, the trial court rendered a written decision denying the motion to suppress. Appellant subsequently entered a no contest plea to the charge of operating a motor vehicle with a prohibited breath alcohol level. The court found him guilty thereon. The remaining charges were dropped.
 {¶ 6} Appellant was sentenced to a term of one year in the Stark County Jail, with all but 141 days suspended. Appellant was ordered to serve the 141 days via an Oriana House Program, followed by electronically monitored house arrest.
 {¶ 7} Appellant filed a notice of appeal on February 11, 2003. He herein raises the following sole Assignment of Error:
 {¶ 8} "I. The Trial Court Erred In Denying Appellant's Motion To Suppress Where There Was No Reasonable Suspicion Of Criminal Activity To Justify Appellant's Stop By The Police."
 I. {¶ 9} In his sole Assignment of Error, appellant cites as error the trial court's decision to overrule his motion to suppress the evidence obtained by the North Canton police officer following the events of the night of November 20, 2002.
 {¶ 10} There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994),95 Ohio App.3d 93; State v. Claytor (1993), 85 Ohio App.3d 623;Guysiner, supra. In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing appellant's sole Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
 {¶ 11} The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. Terry v. Ohio (1968), 392 U.S. 1; State v. Andrews (1991),57 Ohio St.3d 86, 87. "However, not every contact between police officer and citizen implicates the Fourth Amendment. `Only when the officer, by means of physical force or show of authority, has in some way restricted the liberty of a citizen may we conclude that a "seizure" has occurred.'"State v. Lopez (Sept. 28, 1994), Greene App. No. 94-CA-21, quotingTerry, supra, at 19, fn. 16. Ohio law recognizes a distinction between aTerry stop and a consensual encounter; the latter occurs "* * * when the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." State v. Daniels (May 12, 2003), Stark App. No. 2002CA00290, quoting State v. Taylor (1995), 106 Ohio App.3d 741, 747.
 {¶ 12} The facts in our decision in State v. Kegley (May 17, 1996), Ashland App. No. 95-COA-1126, contain a number of striking similarities to the facts of the case sub judice. In Kegley, an officer received a dispatch that a local business had reported open containers in a small brown car. The tip also included a license plate number. The officer passed the vehicle in question, recognized it as the one described in the dispatch, and matched the license plate number. The officer caught up with the vehicle, and pulled behind it shortly after it parked in front of an apartment complex. The officer then turned on his overhead light, then his spotlight. As he approached the vehicle, he smelled an odor of alcoholic beverage. The officer administered field sobriety tests to the defendant. A subsequent breath alcohol test indicated that the defendant had an illegal breath alcohol level. In affirming the trial court's denial of the motion to suppress, we concluded: "[The officer] did not stop the vehicle, but instead, approached an already stopped vehicle for the purpose of conducting a routine investigation. There being no stop, the law did not require the patrolman to present sufficient articulable facts to justify his actions." Id., citing State v. Paxton (May 4, 1992), Perry App. No. CA-414.
 {¶ 13} At the suppression hearing in the case sub judice, Patrolman Mizner described his observation after he pulled his cruiser into the apartment complex:
 {¶ 14} "I pulled up, like, right — he got, he got the vehicle parked, he's backing up, pulling forward. And I called out and I checked with dispatch to see if the plates were the same; and they advised that it, it was the same plate. . . ." Tr. at 8.
 {¶ 15} We review the issue of the existence of a consensual encounter by examining the totality of the circumstances. See Florida v.Royer (1983), 460 U.S. 491, 506-507. In the case sub judice, the officer was indeed looking for a specific vehicle as a result of a citizen tip. Additionally, the officer at some point during the parking lot events activated his lights. Tr. at 11. Cf. City of Hamilton v. Stewart (March 5, 2001), Butler App. No. CA2000-07-148. However, the overall search was unsuccessful until he found the truck already in the final stages of appellant's parking process in the apartment parking lot. We find the evidence does not indicate that the officer "chased" or cornered the vehicle in said lot. By the time the officer exited his cruiser and walked over to the truck, appellant had managed to finish parking the vehicle and had resumed a state of unconsciousness. Under the totality of the circumstances, we conclude the events of November 20, 2002, constituted a consensual encounter such that the Fourth Amendment was not implicated. United States v. Mendenhall (1980), 446 U.S. 544.
 {¶ 16} Therefore, although the trial court judge in the case sub judice commendably engaged in an analysis of the issue of reasonable suspicion as would have supported the officer's actions, we find no error in the denial of the motion to suppress, as no "stop" occurred under the facts presented.
 {¶ 17} Accordingly, appellant's sole Assignment of Error is overruled.
 {¶ 18} For the reasons stated in the foregoing opinion, the judgment of the Canton Municipal Court, Stark County, Ohio, is hereby affirmed.
Gwin, J. and Edwards, J., concur.